IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE: NATIONAL ENERGY & GAS      :
      TRANSMISSION, INC.

NEGT ENERGY TRADING HOLDINGS      :
CORPORATION
     Appellant                    :

     v.                           :     Civil Action No. DKC 08-3497

                                    :

ORRICK, HERRINGTON &
SUTCLIFFE, LLP                    :
     Appellee

                                    :

**MEMORANDUM OPINION**

Appellant National Energy & Gas Transmission Energy Trading Holdings Corporation ("ET Holdings") filed an appeal from the Order of Bankruptcy Judge Paul Mannes granting summary judgment in favor of Appellee Orrick, Herrington & Sutcliffe LLP ("Orrick"). After some of the briefing was complete, Appellant filed a motion for voluntary dismissal of appeal. (Paper 11). In response, Orrick filed a cross motion for sanctions. (Paper 13).[1] Oral argument is deemed unnecessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Fed.R.Bankr.P. 8012. For the reasons that follow, the motion for voluntary dismissal will be granted, and the cross motion for sanctions will be denied.

---

[1] Orrick also filed a motion requesting judicial notice. (Paper 9). The motion will be denied as moot because the court will not reach the merits of the appeal.

I.   **Background**

A.   **Factual History**

National Energy & Gas Transmission, Inc. f/k/a PG&E National Energy Group, Inc. ("NEGT"),[2] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 8, 2003. (*In re NEGT*, 03-30459, Bankr.D.Md. Paper 1).   NEGT, a wholly owned subsidiary of Pacific Gas & Electric Corporation ("PG&E"), was primarily a holding company which owned and managed, directly or indirectly, more than 190 subsidiaries (the "NEGT Entities").   NEGT was an integrated energy company with a strategic focus on power generation and natural gas transmission in North America.   NEGT had several business segments, including interstate pipeline operations, power generation, and energy trading and marketing activities.

NEGT Energy Trading Holdings Corporation ("ET Holdings") is a direct subsidiary of NEGT.   ET Holdings and three of its subsidiaries, NEGT Energy Trading — Power, L.P. ("ET Power"), NEGT Energy Trading — Gas Corporation ("ET Gas"), and ET Investments (collectively with ET Holdings, the "ET Debtors"), also filed voluntary petitions under chapter 11 on July 8, 2003. (*See In re PG&E Energy Trading Holdings Corp.*, 03-30463 (Bankr.D.Md.); *In re PG&E Energy Trading Power - L.P.*, 03-30461 (Bankr.D.Md.)).   There

---

[2]   NEGT is also referred to as NEG.  For purposes of clarity, the court will use NEGT throughout this opinion.

2

were several intermediary parent companies between PG&E, ET Power, and ET Gas.  One of those parent companies was ET Holdings which directly owns 100% of ET Gas.  ET Holdings is the sole general partner of ET Power and the indirect owner of 100% of ET Power's limited partnership interests.  NEGT had several other subsidiaries, including Power Services f/k/a National Energy Group Company ("Power Services"), a non-debtor subsidiary of NEGT which was not owned by ET Holdings.  The following illustration sets forth the relationship among these entities.



In late 2002 and early 2003, PG&E retained Orrick on three new matters.[3]  Each matter was of mutual concern to PG&E, NEGT, and the NEGT subsidiaries.  Between February 13, 2003 and June 12, 2003, Orrick issued ten separate invoices to PG&E totaling $678,839.15.  PG&E was the sole obligor to Orrick on the Orrick invoices.

Upon receipt of the invoices, PG&E forwarded them to Sanford Hartman, general counsel to NEGT and the NEGT Entities.  After the invoices were reviewed by Mr. Hartman, they were sent to Power Services for payment.  Power Services then transmitted funds to Orrick for payment (the "Transfers").  After Power Services paid the invoices, it sent an invoice for reimbursement to the NEGT Entity on whose behalf it paid an expense——in this case, ET Power.  ET Holdings paid the Power Services invoices for reimbursement that were sent to ET Power.

Transfers were made by Power Services to Orrick in satisfaction of Orrick invoices between April 28, 2003 and July 7, 2003, within ninety days of ET Holdings' chapter 11 petition.  ET Holdings subsequently reimbursed Power Services for the amounts paid to

---

[3]  ET Holdings notes that PG&E retained Orrick for the following: (1) to represent PG&E in the sale of ET Canada, a subsidiary of ET Gas; and (2) to represent PG&E in both a review of certain activities by traders of ET Gas and ET Power that had become the subject of an investigation, and a subpoena issued by the Commodities Futures Trading Commission to the NEGT energy trading affiliates.

Orrick.[4]   Because the Transfers to Orrick were made during the ninety day period before ET Holdings' July 8, 2003 bankruptcy petition (the preference period), ET Holdings filed an adversary proceeding on October 31, 2005 seeking to avoid these payments of preferential transfers. (*See NEGT Energy Trading Holdings Corp. v. Orrick, Herrington & Sutcliffe, LLP*, 05-9048 (Bankr.D.Md.)).   ET Holdings asserted that Orrick, its creditor, received more money by accepting payments during the preference period than it would have had the payments been made in accordance with the bankruptcy proceedings.

###    B.   Procedural History

ET Holdings brought an adversary proceeding pursuant to 11 U.S.C. § 547 against Orrick to avoid the alleged preferential transfers.[5]   ET Holdings sought to recover $678,839.15 pursuant to

---

[4] The total amount that ET Holdings reimbursed Power Services for the Transfers is in dispute.  This dispute does not affect the court's analysis.

[5] Section 547(b) provides:

Except as provided in subsection (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property —

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made —

(A) on or within 90 days before the
(continued...)

§ 550, the full amount that Power Services sent to Orrick ninety days prior to the filing of ET Holdings' bankruptcy petition.  (*See NEGT Energy Trading Holdings Corp. v. Orrick, Herrington, & Sutcliffe LLP*, 05-9048 (Bankr. D.Md.)).  Nearly two years later on June 5, 2007, ET Holdings filed a motion to amend the complaint to add a § 548 claim for fraudulent conveyance.[6]  (Paper 1, Att. 5).[7]

---

[5](...continued)
> date of the filing of the petition;
> or
> (B) between ninety days and one year
> before the date of the filing of the
> petition if such creditor at the
> time of such transfer was in
> insider; and

> (5) that enables such creditor to receive more
> than such creditor would receive if—

> > (A) the case were a case under
> > chapter 7 of this title;
> > (B) the transfer had not been made;
> > and
> > (C) such creditor received payment
> > of such debt to the extent provided
> > by the provisions of this title.

[6]  Section 548(a) provides:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily——

> (A) made such transfer or incurred such
> obligation with actual intent to hinder,
> delay, or defraud any entity to which the
> initial intent was or became, on or after the
> date that such transfer was made or such
> obligation was incurred, indebted; or

(continued...)

The bankruptcy court granted the motion on August 3, 2007, and ET Holdings filed an amended complaint the same day. (*Id.*, Att. 42). On May 9, 2008, ET Holdings filed a motion for partial summary judgment to have the bankruptcy court determine as a matter of law

---

[6](...continued)
> (B)(I) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> > (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
> >
> > (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> >
> > (IV) made such transfer to or for the benefit of an insider, or incurred such obligation for the benefit of an insider, under an employment contract and not in the ordinary course of business.

[7] There are two different systems for referring to the documents in the Case Management/Electronic Case Files ("CM/ECF") database.  With respect to the attachments for Paper 1, the designated record on appeal, the numbers that appear on the docket sheet are different than the electronically generated headers on the documents.  This opinion will refer to these attachments as they are numbered on the docket sheet, *not* as the numbers appear on the headers.

that: (1) the Transfers received by Orrick were property of ET Holdings for purposes of §§ 547 and 548, and (2) Orrick was the initial transferee of the Transfers pursuant to § 550. (*Id.*, Att. 45). ET Holdings argued that Orrick received the money that ET Holdings had paid to Power Services on the theory that Power Services was a mere "conduit" for those payments. Specifically, ET Holdings asserted that it paid Power Services and, subsequently, Power Services paid Orrick. Orrick filed a cross-motion for summary judgment on June 27, 2008. (*Id.*, Att. 103, 104). On July 21, 2008, Orrick filed a motion for sanctions.

The bankruptcy court held a hearing on the summary judgment motions on July 24, 2008. At the conclusion of the hearing, the court issued a preliminary ruling in Orrick's favor, granting Orrick's motion for summary judgment and dismissing the complaint. On August 5, 2008, the bankruptcy court issued a memorandum of decision setting forth the reasons for granting Orrick's motion for summary judgment, and entered an order on August 12, 2008 granting the motion. (*Id.*, Att. 175). The bankruptcy court held that the Transfers were not in violation of §§ 547 and 548, and that ET Holdings had no property interest in the funds transferred to Orrick. The court found that Power Services "provided a bill paying service to the NEGT-entities and was nothing more than a intercompany creditor performing its designated responsibilities." (*Id.*, Att. 172). Therefore, the court reasoned that ET Holdings was

8

not entitled to recover property that belonged to Power Services. On August 22, 2008, ET Holdings filed a motion for reconsideration on the basis that the memorandum of decision did not address its argument that the Transfers made by Power Services to Orrick were transfers of an interest of Appellant in property. (*Id.*, Att. 176). The motion for reconsideration was denied on November 24, 2008. (*Id.*, Att. 183).

On August 26 and 27, 2008, the bankruptcy court heard two days of testimony from ET Holdings' witnesses in connection with Orrick's motion for sanctions. On December 3, 2008, ET Holdings filed a notice of appeal to this court. (*Id.*, Att. 185). The bankruptcy court held a hearing on the motion for sanctions on December 10, 2008. On March 30, 2009, the bankruptcy court granted Orrick's motion for sanctions and entered judgment against ET Holdings and its counsel in the amount of $100,000. (*See* Paper 13, at 8-11; Paper 15, at 7 n.3).

Appellee's brief was filed on March 21, 2009. (Paper 8). On April 14, 2009, two weeks after Judge Mannes' sanctions decision, ET Holdings filed a motion to dismiss the appeal pursuant to Federal Rule of Bankruptcy Procedure 8001(c)(2), (Paper 11), and filed its reply brief three days later on April 20, 2009. (Paper 12). Orrick filed a limited opposition to the motion to dismiss and a cross motion for sanctions. Orrick opposes the motion to dismiss the appeal only to the extent that ET Holdings seeks to have each party

bear its own fees and costs.  Orrick requests that this court impose
sanctions on ET Holdings pursuant to Rule 8020 of the Federal Rules
of Bankruptcy Procedure for filing a "frivolous appeal." (Paper 13,
at 2).

## II.  Motion to Dismiss Appeal

As noted above, Orrick does not object to dismissal of ET
Holding's appeal.  Rather, Orrick opposes ET Holding's motion to
dismiss only to the extent that ET Holdings seeks to have each party
bear its own fees and costs.  Orrick argues that because the appeal
is not warranted by existing law, is predicated on false statements
of facts, and fails to include relevant facts, Orrick is entitled
to sanctions pursuant to Federal Rule of Bankruptcy Procedure 8020.

Federal Rule of Bankruptcy Procedure 8001(c)(2) governs
voluntary dismissals of bankruptcy appeals after the appeal has been
docketed.[8]  The rule provides:

> After docketing.  If an appeal has been
> docketed and the parties to the appeal sign and
> file with the clerk of the district court or
> the clerk of the bankruptcy appellate panel an

---

[8]   Fed.R.Bankr.P. 8001(c)(2) is similar to Federal Rule of
Appellate Procedure 42(b), which provides:

> Dismissal in the Court of Appeals.  The
> circuit clerk may dismiss a docketed appeal if
> the parties file a signed dismissal agreement
> specifying how costs are to be paid and pay
> any fees that are due.  But no mandate or
> other process may issue without a court order.
> An appeal may be dismissed on the appellant's
> motion on terms agreed to by the parties or
> fixed by the court.

agreement that the appeal be dismissed and pay
any court costs or fees that may be due, the
clerk of the district court or the clerk of the
bankruptcy appellate panel shall enter an order
dismissing the appeal.  An appeal may also be
dismissed on motion of the appellant on terms
and conditions fixed by the district court or
bankruptcy appellate panel.

"An appellant's motion to voluntarily dismiss its own appeal is generally granted, although courts of appeal have the discretionary authority not to dismiss the case in appropriate circumstances." *HCA Health Servs. of Va. v. Metro. Life Ins. Co.*, 957 F.2d 120, 123 (4th Cir. 1991).  "When the parties do not agree on terms, dismissal is discretionary with the court."  *Albers v. Eli Lilly & Co.*, 354 F.3d 644, 646 (7th Cir. 2004).  Additionally, while "Rule 42(b) authorizes the court of appeals to dismiss an appeal upon the request of the appellant," this power "does not include a general power of conditioning dismissal on the appellant's reimbursing the appellee for the latter's expense of defending the appeal . . . ." *Ormsby Motors Inc. v. Gen. Motors Corp.*, 32 F.3d 240, 241 (7th Cir. 1994).

Here, with the exception of the sanctions issue, the parties agree to dismiss ET Holdings' appeal.  Accordingly, the motion to dismiss will be granted.  The remaining issue is whether Orrick is entitled to sanctions.  For reasons explained below, the motion for sanctions will be denied.

## III. Motion for Sanctions

In the context of a bankruptcy appeal, the party requesting sanctions must do so separately pursuant to Fed.R.Bankr.P. 8020, which provides, in pertinent part: "If a district court . . . determines that an appeal . . . is frivolous, it may, after a separately filed motion or notice from the district court or bankruptcy appellate panel and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Bankruptcy Rule 8020 adopts Rule 38 of the Federal Rules of Appellate Procedure.[9]  *Maloni v. Fairway Wholesale Corp. (In re Maloni)*, 282 B.R. 727, 733-34 (1st Cir. 2002).

Upon consideration of a motion for sanctions for filing a frivolous appeal, the court "must first determine that the appeal is frivolous, and then determine that this is an appropriate case for the imposition of sanctions." *Williams v. U.S. Postal Serv.*, 873 F.2d 1069, 1075 (7th Cir. 1989).  "An appeal is frivolous if the result is obvious, or the arguments of error are wholly without merit." *Wilcox v. C.I.R.*, 848 F.2d 1007, 1009 (9th Cir. 1988); *see*

---

[9]  Federal Rule of Appellate Procedure 38 provides:

> If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

*also Westcott Contstr. Corp v. Firemen's Fund of N.J.*, 996 F.2d 14, 17 (1st Cir. 1993). Sanctions are appropriate where "the overwhelming weight of precedent was against appellant's position, where appellant could set forth no facts to support its position, or where, in short, there simply was no legitimate basis for pursuing an appeal." *Ramirez v. Debs-Elias*, 407 F.3d 444, 450 (1st Cir. 2005)(quoting *Kowalski v. Gagne*, 914 F.2d 299, 309 (1st Cir. 1990)).

In support of the motion for sanctions, Orrick relies heavily on the bankruptcy court's characterization of this case and the reasons for imposing sanctions against ET Holdings. The bankruptcy court imposed sanctions in the amount of $100,000 against ET Holdings, finding that ET Holdings and its counsel, Whiteford, Taylor & Preston LLP: (1) failed to carry out their obligations to conduct this litigation upon proper investigation of relevant facts and with adequate basis in law; (2) needlessly multiplied the proceedings and otherwise conducted the litigation unreasonably; and (3) acted in bad faith in commencing and maintaining the litigation. (Paper 13, ¶ 31). Orrick also describes numerous purported misstatements of fact and law made by ET Holdings throughout the course of the litigation. ET Holdings responds that the appeal is not frivolous, and that the motion seeking damages and costs must be denied because the questions that ET Holdings presented on appeal are meritorious.

The court declines to impose additional sanctions in this case and need not decide either the merits of the appeal or whether the appeal was frivolous.   Whether to grant sanctions even for a frivolous appeal is discretionary.   *Flaherty v. Gas Research Institute*, 31 F.3d 451, 459 (7th Cir. 1994).   Certainly, merely because an appeal is found to be without merit does not automatically characterize it as frivolous.   *See, e.g., Cohen v. Va. Elec. & Power Co.*, 788 F.2d 247, 249-50 (4th Cir. 1986)(noting that although the appeal was without merit, claims were not so frivolous to warrant sanctions).   Relief under Rule 38 is only granted in exceptional circumstances.   Moreover, "[a] finding by the [bankruptcy] trial court that sanctions were appropriate will not automatically result in the further imposition of sanctions if the appellant is unsuccessful on appeal." *Brown v. Nationwide Mut. Ins. Co.*, 805 F.2d 1242, 1244 (5th Cir. 1986).   Finally, the voluntary dismissal shortly after sanctions were imposed by the bankruptcy court militates against sanctions:   Courts "do not want to discourage voluntary dismissals, which save the time not only of appellees but of this court, by a readiness to grant sanctions sought as here on the ground that by the very act of moving to dismiss the case the appellant has acknowledged its frivolousness." *Ormsby Motors, Inc. v. Gen. Motors Corp*, 32 F.3d 240, 241 (7th Cir. 1994).   Therefore, Orrick's motion for sanctions will be denied.

**IV.   Conclusion**

For the foregoing reasons, the motion for judicial notice will be denied as moot, the motion to dismiss the appeal will be granted, and the cross motion for sanctions will be denied.  A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge